IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

CAROL K. SCOTT, )
)
Plaintiff, )
)
v. ) 1:05cv970(JCC)
)
MID-ATLANTIC CABLE, )
INSTALLATION, LLC, *et al.* )
)
Defendants. )

**M E M O R A N D U M   O P I N I O N**

This matter comes before the Court on Plaintiff's motion in limine to exclude Sheila Mongeon as a defense expert witness and Defendants' cross motion in limine to exclude Plaintiff's experts Dr. Bruce Ammerman and Dr. Phillip Bussey. For the following reasons, the Court will grant in part and deny in part Plaintiff's motion and deny Defendants' cross motion.

## I. Background

Plaintiff, Carol K. Scott, has filed this diversity of citizenship action against Defendants, Mid-Atlantic Cable Installation LLC ("Mid-Atlantic") and Luis Angel Torres Rodriquez, seeking to recover damages for medical care expenses, pain and suffering, mental anguish, lost earning capacity, and lost future retirement benefits. Plaintiff alleges that on September 4, 2003, Rodriquez was operating a Mid-Atlantic vehicle in the scope of his employment and negligently collided with Plaintiff's stopped vehicle, causing Plaintiff permanent

injuries. Defendants filed a motion for partial summary judgment, seeking summary judgment only on Plaintiff's claims for lost earning capacity and future retirement benefits. The Court denied the motion on May 31, 2006. On July 6, 2006, Plaintiff filed a motion in limine to exclude Sheila Mongeon, PT, as a defense expert witness. In response, on July 14, 2006, Defendants filed a cross-motion in limine in the alternative to exclude Plaintiff's experts, Dr. Bruce Ammerman and Dr. Phillip Bussey. These motions are currently before the Court.

## II. Standard of Review

Rule 702, which was amended effective December 1, 2000, to reflect the Supreme Court's rulings in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), now provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

Pursuant to their role as gatekeepers, district court judges must act to "'ensure that any and all scientific testimony

. . . is not only relevant, but reliable.'" *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001) (quoting *Daubert*, 509 U.S. at 588). Accordingly, "a trial judge, faced with a proffer of expert scientific testimony, must conduct 'a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'" *Id.* (quoting *Daubert*, 509 U.S. at 592-93).

As a preliminary matter, a district judge, in making this assessment, should examine the following list of factors: "(1) whether a theory or technique can be or has been tested; (2) whether it has been subjected to peer review and publication; (3) whether a technique has a high known or potential rate of error and whether there are standards controlling its operation; and (4) whether the theory or technique enjoys general acceptance within a relevant scientific community." *Id.* (citing *Daubert*, 509 U.S. at 592-94). This list, however, is "neither definitive[] nor exhaustive." *Id.* Rather, the factors listed "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Id.* at 200.

The primary goal of this inquiry is to ensure that the proffered testimony is reliable, in the sense that it is based on scientific knowledge, and relevant, in the sense that it will be

of assistance to the fact-finder. *United States v. Barnette*, 211 F.3d 803, 815 (4th Cir. 2000). Put another way, the gatekeeping requirement is meant "to ensure that the expert witness in question in the courtroom employs the same level of intellectual vigor that characterizes the practice of an expert in the relevant field." *Id.* at 815-16 (citing *Kumho Tire Co.*, 526 U.S. at 152).

Expert testimony, in order to be reliable, "must be based on scientific, technical, or other specialized *knowledge* and not on belief or speculation, and inferences must be derived using scientific or other valid methods." *Oglesby v. General Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999) (citing *Daubert*, 509 U.S. at 590, 592-93) (emphasis in original). "Reliability of specialized knowledge and methods for applying it to various circumstances may be indicated by testing, peer review, evaluation of rates of error, and general acceptability." *Id.* (citing *Daubert*, 509 U.S. at 593-94). At the end of the day, however, a district court's decision with respect to the admissibility of expert scientific testimony "is always a flexible one, and the court's conclusions necessarily amount to an exercise of broad discretion guided by the overarching criteria of relevance and reliability." *Id.*; *see also Cooper*, 259 F.3d at 200 (noting the Supreme Court's statement in *Kumho Tire* that trial judges "must have considerable leeway in deciding

in a particular case how to go about determining whether particular expert testimony is reliable") (quoting *Kumho Tire*, 526 U.S. at 152); *Barnette*, 211 F.3d at 816 (noting the Fourth Circuit's consistent practice of giving "great deference" to a trial court's *Daubert* ruling).

**III. Analysis**

Pursuant to Federal Rules of Evidence 104.1 and 702, Plaintiff seeks the exclusion of the testimony of Sheila Mongeon, a physical therapist identified as an expert witness by the Defendants. Plaintiff claims that she recited scientific opinions beyond her qualifications and expertise and that she failed to employ a reliable methodology that satisfied accepted scientific medical standards in formulating her opinions. The general conclusion of Mongeon is that Plaintiff is physically able to perform the tasks of a lawyer on a regular, full-time and sustained basis and that using ergonomic[1] apparatuses could alleviate pain or worsening of Plaintiff's condition.

In support of her argument, Plaintiff first complains that Mongeon never communicated with the other experts retained by the Defendant, most notably, the neurosurgeon. The argument suggests that since a "team" approach was not implemented, Mongeon's conclusions are unreliable. Plaintiff asserts that all

---

[1] "The science relating to man and his work, embodying the anatomic, physiologic, psychologic, and mechanical principles affecting the efficient use of human energy." Dorland's Medical Dictionary 508 (24th ed. 1965).

of Mongeon's opinions are based on a single consultation on January 31, 2006. Additionally, Mongeon did not see any medical records or diagnostic films related to Plaintiff's cervical spine, did not request any of Plaintiff's previous employment records, and did not see Dr. Ammerman's Residual Capacity Evaluation. Plaintiff claims that only the information garnered in the single consultation amounted to Mongeon's prediction at issue here and that method is inherently unreliable.

Additionally, Plaintiff complains that Mongeon is unqualified to express an opinion on anything related to ergonomics. Plaintiff objects to Mongeon's conclusion that occupational devices exist that would enable Plaintiff to fully function as an attorney since Mongeon suggested that an Ergonomic Evaluation would be appropriate to provide recommendations for appropriate equipment and positioning. Furthermore, Plaintiff highlights that Mongeon does not have certifications in ergonomics and that her opinion was based on "predictions."

The Court is persuaded by Plaintiff's arguments on Mongeon's background in ergonomics. Mongeon's training in ergonomics is minimal. More importantly, Mongeon admits that she does not hold herself out as an expert in ergonomics. (Plf.'s Mot. Ex. 3 p.36.) It is incredulous to argue that Mongeon is an expert in ergonomics in light of her unambiguous statement.

However, the Court is not persuaded by Plaintiff's attempt to undermine the methodology used by Mongeon. Mongeon is a Certified Industrial Rehabilitation Specialist who has thirteen years of experience performing Functional Capacity Evaluations ("FCE"), like the one performed on Plaintiff in the present case. The methodology Mongeon used to reach her conclusions was indeed a single consultation, as Plaintiff emphasizes; yet, this single consultation consisted of a four hour FCE, which is an approach widely tested and reputed. The validity of this approach is further confirmed by the approval of one of Plaintiff's own experts. (Defs' Mot. 15.) Furthermore, while it may be unwise to conduct the evaluation without consultation with other medical professionals and without review of Plaintiff's medical history, any deficiencies in the processes used by Mongeon can be elicited during cross-examination and considered by the finder of fact. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 (1999).

Thus, the Court will allow Mongeon to testify, but only to what she observed during the FCE and any limitations she may infer from her observations. Mongeon will not be permitted to testify about any medical opinions, causation, or any subject relating to ergonomics.

Finally, the Court finds no basis for granting Defendants' motion to exclude the testimony of Dr. Ammerman and Dr. Bussey, in light of the Court's ruling on Mongeon's

methodology. Defendants' motion appears merely to be a retaliatory response to Plaintiff's motion with little foundation, given that the two proposed experts are physicians.

**IV. Conclusion**

For the foregoing reasons, the Court will grant in part and deny in part Plaintiff's motion in limine and deny Defendants' cross-motion in limine. An appropriate Order will issue.

July __25_, 2006
Alexandria, Virginia

________________/s/_______________
James C. Cacheris
UNITED STATES DISTRICT COURT JUDGE